USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/13/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC WHITFIELD,

           Petitioner,

-v-

HAROLD M. GRAHAM,

           Respondent.

No. 10-cv-3038 (RJS) (RLE)
ORDER ADOPTING
REPORT AND RECOMMENDATION

RICHARD J. SULLIVAN, District Judge:

Petitioner Eric Whitfield ("Whitfield") brings this addendum to his petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his May 27, 2004 convictions in New York State Supreme Court, New York County, for second-degree murder and first-degree robbery, for which he was sentenced to a term of imprisonment of twenty-five years to life. (Doc. No. 62, Ex. 1 ("Addendum").) Now before the Court are (1) the Report and Recommendation of the Honorable Ronald L. Ellis, Magistrate Judge, recommending that the claims in the addendum be denied (Doc. No. 87 (the "Report")), and (2) Whitfield's objections to the Report (Doc. No. 88 ("Objections" or "Obj.")). For the following reasons, the Court adopts the Report in its entirety and denies Whitfield's petition as supplemented by the addendum.

I.    BACKGROUND

The Court assumes the parties' knowledge of most of the facts and procedural history of this case, which are described in detail in the Court's August 23, 2013 Memorandum and Order denying Whitfield's habeas petition (Doc. No. 57), as well as in Judge Ellis's December 29, 2010 Report and Recommendation (Doc. No. 34). Briefly, Whitfield was convicted on May 27, 2004

of the second-degree murder and first-degree robbery of Wesley Penn. At Whitfield's trial, the jury considered his written and videotaped confessions as well as the testimony and statements of his co-defendants Corey Mitchell, Cheechee Singleton, and Derrick General, which established that Whitfield and Mitchell recruited General and another defendant, Darnell Sylvester, to bind and beat Penn because he had stolen money from Whitfield and Mitchell. Several of the defendants, including Whitfield, Mitchell, General, and Sylvester, planned the beating beforehand at Whitfield's home, where Whitfield also provided General and Sylvester with the duct tape they would use to incapacitate Penn. Whitfield later gave Penn a sedative drink and paid for the cabs that the conspirators took home after the beating and robbery. (*See* Doc. No. 75 at 81–82 (Mitchell statement); *id.* at 77 (Whitfield written confession); Doc. No. 73 at 11 (Singleton testimony); Trial Transcript ("Tr.") at 69 (General testimony).) According to the coroner, Penn died because of the duct tape on his mouth and injuries to his neck. (Doc No. 57 at 2 (citing Tr. 477).)

Whitfield appealed his conviction and sentence to the Appellate Division, First Department, claiming that (1) his trial counsel rendered ineffective assistance, (2) the trial judge improperly instructed the jury, and (3) his sentence was excessive. The Appellate Division affirmed Whitfield's conviction on October 11, 2007, and the New York Court of Appeals denied his application for leave to appeal on January 28, 2008. Whitfield then filed a motion to vacate the judgment against him under New York Criminal Procedure Law ("N.Y.C.P.L.") § 440.10. That motion was denied on December 4, 2009, and leave to appeal was denied on May 13, 2010. (*See* Doc. No. 34 at 6.)

On March 2, 2010, Whitfield filed the original petition in this case, seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. No. 1.) The petition challenged Whitfield's conviction on the grounds that (1) his confession was coerced, (2) his arrest was unlawful, (3) his right against

self-incrimination was violated, and (4) his trial counsel rendered ineffective assistance. (*Id.* at 7–8.) The Court referred the petition to Judge Ellis, who recommended that it be denied because Whitfield's first and third claims were procedurally barred, his second claim was unexhausted and procedurally barred, and his fourth claim was meritless. (Doc. No. 34 at 6–14.) On November 29, 2011, after Whitfield failed to file any objections, the Court adopted Judge Ellis's Report and Recommendation in its entirety. (Doc. Nos. 34, 36.) The Court then reopened this matter a month later upon receipt of a letter from Whitfield indicating that he wished to file objections but had never received Judge Ellis's report. (Doc. No. 37.) Whitfield submitted his objections on January 18, 2012, which the Court reviewed before once again adopting Judge Ellis's report and denying Whitfield's petition on August 23, 2013. (Doc. No. 57.)

Whitfield appealed the Court's order denying his petition on September 13, 2013. (Doc. No. 59.) Then, while his appeal was pending, Whitfield filed an "addendum" to his petition raising a new claim of actual innocence based on three affidavits that he obtained after the Court denied his petition. (*See* Doc. No. 62 at 1.) Explaining that Whitfield's new claim was not successive within the meaning of 28 U.S.C. § 2244(b) because he filed the addendum during the pendency of his appeal from the denial of his petition, the Second Circuit transferred the addendum to this Court for consideration in the first instance on May 8, 2014. (Doc. No. 62 at 1–2 (citing *Whab v. United States*, 408 F.3d 116, 118 (2d Cir. 2005)).) The Court then set a briefing schedule and referred this matter again to Judge Ellis. (Doc. Nos. 63, 83.) Judge Ellis issued his Report on September 2, 2016, and Whitfield filed his Objections on September 20, 2016. (Doc. Nos. 87, 88.)

## II. Legal Standard

A federal court may grant habeas corpus relief only if a claim that was adjudicated on the merits in state court (1) "resulted in a decision that was contrary to, or involved an unreasonable

3

application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Clearly established Federal law means the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (internal quotation marks omitted). A state court decision is "contrary to" such a holding only where the state court "either 'arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite result].'" *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). An "'unreasonable application' of those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted). A federal court should grant habeas relief only if "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). A court may accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (citing Fed. R. Civ. P. 72(b) and *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). When a party makes specific objections to a magistrate judge's findings or legal conclusions, the court must undertake a *de novo* review of

the objected-to findings. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). However, "to the extent . . . that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) (quoting *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865 (LTS), 2008 WL 4810043, at *1 (S.D.N.Y. Oct. 31, 2008)). A magistrate judge's decision is clearly erroneous only if the district court is "left with the definite and firm conviction that a mistake has been committed." *SEC v. Cobalt Multifamily Investors I, Inc.*, 542 F. Supp. 2d 277, 279 (S.D.N.Y. 2008) (quoting *Chen v. Bd. of Immigration Appeals*, 435 F.3d 141, 145–46 (2d Cir. 2006)). Objections of parties appearing *pro se* are "generally accorded leniency" and construed "to raise the strongest arguments that they suggest." *Milano v. Astrue*, No. 05-cv-6527 (KMW), 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008) (internal quotation marks omitted). "Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a 'second bite at the apple' by simply relitigating a prior argument." *Pinkney v. Progressive Home Health Servs.*, No. 06-cv-5023 (LTS), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008).

### III. DISCUSSION

Whitfield's addendum asserts two claims: (1) a freestanding actual-innocence claim as an independent basis for federal habeas relief, and (2) in the alternative, a claim that his actual innocence provides a gateway for the Court to review his claims that would otherwise be procedurally barred. (*See* Doc. No. 64.) He supports his addendum with three affidavits: (i) an affidavit from co-defendant Derrick General recanting his trial testimony about Whitfield's role in the death and robbery of Wesley Penn and claiming that he mistook Whitfield for Mitchell on the

5

night of the crime; (ii) an affidavit from Betty Jean Wallston, a relative of Whitfield's who did not testify at his trial, alleging that certain detectives deceived her and Whitfield about whether he was under arrest or needed a lawyer; and (iii) an affidavit from Clarence L. Dickerson, Whitfield's cousin, alleging that Whitfield, unlike Mitchell, never lived with Wesley Penn. (Addendum at 3–15.) Judge Ellis's Report recommends denying both Whitfield's claims: his freestanding actual-innocence claim because it is not cognizable in this Circuit, and his gateway claim because the new affidavits do not establish actual innocence. (Report at 6-11.)

Whitfield asserts two basic "objections" to the Report. First, he contends that freestanding actual-innocence claims are indeed cognizable in this Circuit. (Obj. at 9.) Second, he disagrees with Judge Ellis's reasons for finding that the new affidavits offer insufficient evidence of actual innocence. (*Id.* at 12–14.) Because the first objection simply repeats the arguments Whitfield made in his addendum and does not specifically contest any of Judge Ellis's findings, the Court reviews the corresponding parts of the Report for clear error only. Having found none – indeed, the Supreme Court has *not* definitively pronounced on whether actual innocence is a cognizable independent ground for habeas relief, while the Second Circuit has consistently *declined* to recognize freestanding actual-innocence claims – the Court adopts Judge Ellis's recommendation that Whitfield's freestanding actual-innocence claim be denied. *See, e.g., McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *United States v. Quinones*, 313 F.3d 49, 69 (2d Cir. 2002) (same). Whitfield's second objection, by contrast, makes specific objections to Judge Ellis's

findings regarding the three new affidavits' sufficiency to demonstrate actual innocence for the purpose of his gateway claim. The Court accordingly reviews those findings *de novo*.

As noted above, "a claim of actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim[s] considered on the merits." *Herrera*, 506 U.S. at 404; *see also House v. Bell*, 547 U.S. 518, 522 (2006) ("In certain exceptional cases involving a compelling claim of actual innocence . . . the state procedural default rule is not a bar to the federal habeas corpus petition."). Moreover, "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Thus, "prisoners asserting innocence as a gateway to default[ed] claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House*, 547 U.S. at 536–37; *see also Schlup v. Delo*, 513 U.S. 298, 324 (1995) (explaining that "[t]o be credible," a so-called gateway claim requires "new reliable evidence . . . that was not presented at trial"). "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *House*, 547 U.S. at 538. This requires "a holistic judgment about 'all the evidence.'" *Id.* at 539 (quoting *Schlup*, 513 U.S. at 328).

Here, Judge Ellis found that the three new affidavits attached to Whitfield's addendum fail to establish his actual innocence because a reasonable juror could discount them in several respects and easily find Whitfield guilty on the basis of the rest of the evidence presented at trial. With respect to Derrick General's affidavit, which recants his trial testimony and maintains that he repeatedly confused Whitfield with co-defendant Corey Mitchell, Judge Ellis observed that a reasonable juror might doubt General's new account for a number of reasons. First, Judge Ellis

noted that General gives no satisfactory explanation for why he waited ten years to recant his testimony. (Doc. No. 87 at 7.) Second, Judge Ellis observed that General's affidavit is contradicted by Whitfield's own written and taped confessions, as well as by other co-defendants' statements, including that of Mitchell, who stated that he and Whitfield planned Penn's beating because Penn had stolen money from both of them, and that of Singleton, who testified that Whitfield recruited General and Sylvester to help carry out the plan. (*Id.* at 7–8.) Finally, Judge Ellis concluded that General's new account cannot be reconciled with his own previous testimony that Whitfield provided the defendants with duct tape and rope and that *both* Whitfield and Mitchell were present when the defendants were planning to rob Penn. (*Id.* at 8.) Indeed, the latter statement both undercuts, and renders irrelevant, General's assertion that he mistook Whitfield for Mitchell. Based on these deficiencies, Judge Ellis found that "General's affidavit lacks the specificity and key facts necessary to refute the testimony of the other co-defendants that substantiate [Whitfield's] conviction." (*Id.* at 9.)

As for Betty Jean Wallston's affidavit, Judge Ellis reasoned that, although it corroborates Whitfield's claim that he was refused a lawyer, it does so solely on the basis of a reported conversation with Whitfield in which Whitfield told her that information himself – on the basis, in other words, of inadmissible (and self-serving) hearsay. (*Id.*) And Judge Ellis found Clarence L. Dickerson's affidavit to be "similarly unconvincing" because the claim that Whitfield and Penn were never roommates is consistent with Whitfield's testimony that he spent at least weekends at Penn's house and does not undermine Whitfield's most obvious motive for participating in the robbery of Penn – namely, to get even with Penn for previously having stolen money from him. (*Id.* at 10.)

8

The Court is not persuaded by Whitfield's objections to these findings. With respect to the timing of General's affidavit, Whitfield simply repeats General's own unsatisfactory reason for recanting his trial testimony a decade later – that he is no longer concerned about being charged with perjury – without explaining why his fear of prosecution evaporated in 2014 rather than in 2009, when the five-year statute of limitations had run. (*See* Obj. at 12; Addendum at 7); N.Y. Crim. Proc. Law § 30.10(b). Courts typically view with suspicion such affidavits "produced . . . at the 11th hour with no reasonable explanation for the . . . delay." *Herrera*, 506 U.S. at 423 (O'Connor, J., concurring). More importantly, Whitfield makes no effort to reconcile General's new testimony with his own contradictory confessions and the testimony of other co-defendants, which establishes that Whitfield and Mitchell together planned to beat Penn up and remove property from his apartment, that Whitfield provided rope, duct tape, and latex gloves and prepared a sedative drink for Penn, and that Whitfield helped Mitchell remove Penn's belongings after General and Sylvester beat and bound Penn. Instead, Whitfield relates what appears to be an entirely speculative account of the prosecution's "plot" to keep General and Whitfield from seeing each other before trial by having them housed in separate jails. (*See* Obj. at 14.) In short, Whitfield makes no persuasive objections to Judge Ellis's assessment of General's affidavit, and the Court agrees with Judge Ellis that the affidavit does not present evidence "that would so overwhelm the record evidence as to prevent any jury from convicting him." *Florez v. United States*, No. 07-cv-4965 (CPS), 2009 WL 2228121, at *8 (E.D.N.Y. July 24, 2009).

Nor do the other affidavits make up the deficit. Whitfield objects that Dickerson's testimony about Whitfield's living arrangements is "essential" because it shows that he was not a "vengeful ex-roommate" of Penn's with a motive to sedate, immobilize, and rob him. (Obj. at 18.) But the Court agrees with Judge Ellis that Dickerson's affidavit establishes, at most, that Whitfield

and Penn never formally lived together; it is entirely consistent with Whitfield's own testimony that he spent significant time at Penn's house, and, more importantly, it comes nowhere close to showing that Whitfield had no other motive to engage in the activity that led to Penn's death. It certainly does not constitute, either alone or in combination with General's affidavit, the kind of overwhelming evidence of Whitfield's innocence that the actual-innocence standard requires. Whitfield also argues that Judge Ellis's consideration of Wallston's affidavit focuses too much on hearsay and neglects the parts that recount Wallston's personal conversations with certain detectives at the precinct – specifically, conversations in which the detectives repeatedly told her that Whitfield would be released "soon" even though he remained at the precinct for considerably longer. (Obj. at 15–17.) Those conversations, Whitfield contends, substantiate Whitfield's own testimony about the detectives' misleading behavior and refusal to allow him to consult a lawyer while he was at the precinct. (*Id.* at 17.) But as Judge Ellis found, Wallston's statement contributes no new facts to the overall narrative; the jury heard testimony from both Whitfield and the detectives about the time that Whitfield spent in the precinct, and they "apparently determined that on this issue the detectives were credible and Whitfield was not." (Report at 10.) The affidavit – which consists largely of hearsay and was "obtained without the benefit of cross-examination and an opportunity to make credibility determinations," *Herrera*, 506 U.S. at 417 – even if it corroborates some portion of Whitfield's testimony, is largely duplicative and certainly insufficient to support a finding that "it is more likely than not that no reasonable juror would have found [Whitfield] guilty beyond a reasonable doubt." *House*, 547 U.S. at 536–37.

The standard for an actual-innocence claim is high: a petitioner must present "new[,] reliable evidence" – such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" – that was not presented at trial, and that so strongly establishes his

innocence that a court "cannot have confidence in the outcome of the trial." *Schlup*, 513 U.S. at 324, 316. Whitfield has not met that standard here. A decade after his conviction, with no explanation for the delay, and in the face of multiple contradictory accounts, he presents three affidavits that simply do not include the kind of overwhelmingly exculpatory evidence that would allow the Court to find it more likely than not that "no reasonable juror would have found [him] guilty beyond a reasonable doubt." *House*, 547 U.S. at 536–37. Accordingly, Whitfield's gateway actual-innocence claim must be denied.

## IV. CONCLUSION

For the reasons set forth above and in Judge Ellis's Report, IT IS HEREBY ORDERED THAT the Petition – as modified by the addendum – is DENIED. In addition, because Petitioner has not "made a substantial showing of the denial of a constitutional right," the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be undertaken in good faith, and, therefore, Petitioner may not proceed *in forma pauperis*.

The Clerk of Court is respectfully directed to (1) enter judgment in favor of Respondent and close this case, and (2) mail a copy of this Order to Petitioner.

SO ORDERED.

Dated: September 13, 2017
       New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE